**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ALEXANDER MOLINA** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:20-CV-00626 |
| | § | |
| **SMURFIT KAPPA NORTH** | § | |
| **AMERICA, LLC** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **ALEXANDER MOLINA**, hereinafter referred to as "Plaintiff," or "Mr. Molina," and files this Plaintiff's Original Complaint, complaining **SMURFIT KAPPA NORTH AMERICA, LLC,** hereinafter referred to as "Defendant," or "Smurfit Kappa." Mr. Molina alleges violations of Americans with Disabilities Act of 1990 (ADA) as Amended and the Family and Medical Leave Act (FMLA).   For causes of action, Mr. Molina would show this Court as follows:

### I.
### PARTIES

1.      Plaintiff **ALEXANDER MOLINA** is a resident of San Antonio, Bexar County, Texas.

2.      Defendant **SMURFIT KAPPA NORTH AMERICA, LLC** is a Foreign Limited Liability Company doing business in San Antonio, Bexar County, Texas, which may be served with process by the clerk of the court by certified mail, return receipt requested by serving Defendant's registered agent: CT Corporation System, 1999 Bryan St., Ste 900 Dallas, TX 7502-3136.   A waiver of Service has been requested.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction to hear the merits of Molina's claims under 28 U.S.C. §1331 as they arise under federal statutes, specifically, Americans with Disabilities Act as amended, and the Family and Medical Leave Act.

4. All the acts alleged herein occurred in Bexar County, Texas.

5. Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

6. At the time of filing, damages are within the jurisdictional limits of the court.

## III.
## MISNOMER / MISIDENTIFICATION

7. In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTS

8. Plaintiff Alexander Molina was hired by Defendant Smurfit Kappa as a Stacker/Operator on or about July 2, 2012.

9. Mr. Molina had severe pain in his foot that gave him difficulty walking and on March 8, 2019 he sought treatment at Texas MedClinic due to low back and foot pain. Mr. Molina was prescribed the muscle relaxant Flexeril, given a note that he should be off work until March 12, 2019 and told to follow up with his primary care physician.

10. Mr. Molina provided the doctor's excuse to Melissa with Defendant's Human Resources (HR) Department. Whenever Mr. Molina would have a doctor's appointment it was

2

his practice to call Melissa and advise her that he had an appointment and to provide her with a doctor's excuse after the appointment.

11.     Following his March 8 appointment, Mr. Molina advised Melissa that he would need to see the doctor more often because of his foot.

12.     At that time Mr. Molina asked Melissa if he needed any paperwork to take to the doctor to get approval for the absences and he was told that he did not need additional documents.

13.     Mr. Molina next saw his primary care physician Dr. Daniel Kellum on March 22, 2019, reported difficulty the major life activity of walking and foot pain.

14.     Dr. Kellum gave Mr. Molina some prescriptions and set a follow up appointment for April 12. He also gave Mr. Molina a doctor's excuse that Mr. Molina provided to Defendant.

15.     During the April 12 follow up Mr. Molina reported that he still had pain in his heels that was worse with weight bearing. He again reported difficulty walking and foot pain. Dr. Kellum ordered additional testing including a nerve conduction test and some injections and set a follow up.

16.     Mr. Molina was given a doctor's excuse for his treatment on April 12 and he provided it to his employer.

17.     Due to the foot pain, Dr. Kellum set an appointment for Mr. Molina to get his right toenail removed on July 5, 2019.

18.     On July 3, 2019, Mr. Molina was contacted by Dr. Kellum's office asking to move the appointment for the toenail extraction to July 3, 2019. Mr. Molina contacted Defendant's Human Resources office and spoke to Melissa about the absence and what he needed to do since the procedure would keep him from attending his evening shift that day.

19. Melissa told Mr. Molina that as long as he had the doctor's excuse he would not receive a point infraction under Defendant's point-based attendance policy. She also informed Mr. Molina that he needed to turn in the doctor's paperwork within 2 days.

20. Mr. Molina had the procedure on July 3 and was given a work excuse through July 8. He took the excuse to Defendant on July 5, 2019 and informed Melissa that he would be out until July 8.

21. Mr. Molina contacted Melissa again on July 8, informed her that he had been released to return to work and that he would be back for his 7 p.m. shift.

22. On July 9, Mike Espino, Defendant's superintendent called Mr. Molina into his office and told him he was going to get a write up for attendance. Mr. Molina also informed Mr. Espino that he had told Melissa in HR about the situation.

23. On July 10, 2019, Mr. Molina's supervisor Jackson told him to go see Espino. Espino told Mr. Molina that he was being terminated under the point system. Mr. Molina pointed out that even if all his absences were counted under the point system that he would not reach the 8 points at which termination occurs. Mr. Espino told him that he could not miss any more time and that he would speak with Melissa in HR about whether she knew that Mr. Molina had a medical problem with his foot.

24. Mr. Espino called Mr. Molina back later that day and told him he was terminated. Espino said that Melissa told him that Molina had not told her about his medical condition. Mr. Molina told Mr. Espino that he had given Melissa the doctor's excuses showing where he was.

## V.
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE WITH PLAITNIFF'S REQUEST FOR LEAVE AND RETALIATION FOR REQUESTING LEAVE

4

25. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*.

26. Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

27. Defendant employed, and continues to employ, fifty or more persons at, or within a seventy-five (75) mile radius of, the location where Plaintiff worked. Thus it is believed Defendant was covered by the FMLA.

28. During the time that Plaintiff was employed by Defendant, he was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

29. While Plaintiff was employed by Defendant, Plaintiff had an illness or medical condition that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11). Plaintiff was entitled to medical leave for his serious health condition as provided for in the FMLA (in 29 U.S.C. § 2612(a)(1)(D)).

30. Plaintiff had a serious health condition, informed Defendant that he would need leave to attend medical visits, and qualified for leave under the Act.

31. Rather than extending benefits to Plaintiff under the Act, Defendant chose to terminate Plaintiff's employment.

## VI.
## DISABILITY DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

32. The evidence will show that:

> (1) Plaintiff was disabled (actually disabled and/or "regarded as" or "perceived as" disabled due to his disabilities) specifically Plaintiff medical conditions in his foot that interfered with the major life activity of walking.

    (2) Plaintiff was qualified for his position;

    (3) Plaintiff suffered an adverse employment action in that he was terminated following his request for accommodation; and,

    (4) The circumstances arising raise an inference of disability discrimination.

33. The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

34. Defendant failed to engage in the interactive process. Plaintiff requested accommodations, including medical leave to attend doctor visits that would qualify as a serious health condition under the FMLA. Plaintiff followed Defendant's policy and brought in doctor notes supporting that he had doctor appointments. He also explained to Defendant that he would need to go to more frequent doctor visits due to his medical condition. Despite this, Defendant penalized Plaintiff under the point-based attendance policy and then terminated him.

35. The mere fact that Defendant may have had a "neutral" point based attendance policy does not prevent it from being discriminatory. ***U.S. Airways, Inc. v. Barnett***, 535 U.S. 391, 398 (S.Ct. 2002). An employer must modify a no fault policy to provide additional leave for disability related treatment unless it can show that the additional leave would create an undue hardship.

## VII.
## RESPONDEAT SUPERIOR

36. Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant and were at all times acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## VIII.
## DAMAGES

37. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, he is entitled to recover at least the following legal damages:

   a. Lost wages, past and future;

   b. Compensatory Damages, including Mental Anguish, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life suffered in the past, and which, in all reasonable probability, which will be suffered in the future;

   c. Pecuniary losses; and punitive damages

   d. Reasonable attorney fees, expert fees and costs.

   e. Based upon the above enumerated damages, the Plaintiff pleads for actual damages for the above damage elements in an amount the jury deems reasonable.

## IX.
## ADMINISTRATIVE FILINGS

38. Plaintiff filed his original verified complaint with the Equal Employment Opportunity Commission alleging that the Defendant had committed and unlawful employment action against Plaintiff.

39. Thereafter, Plaintiff received a "Notice of Suit" from the EEOC on both charges, giving Plaintiff notice of his right to sue Defendant within 90 days of its receipt, attached hereto as **Exhibit "A"**.   Plaintiff has timely filed this Plaintiff's Original Complaint.

## X.
## ATTORNEY FEES

40. Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

    a. Preparation and trial of the claim, in an amount the jury deems reasonable;

    b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

    c. An appeal to the Court of Appeals, in an amount the jury deems reasonable;

    d. Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees in the event that application for Writ of Error is granted, in an amount the jury deems reasonable; and

    e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XI.
## JURY DEMAND

41. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## XII.
## PRAYER FOR RELIEF

WHEREFORE, Alexander Molina requests that Smurfit Kappa North America, LLC, be cited to appear and answer, and that on final trial, Molina have judgment against Smurfit Kappa as follows:

1. judgment against Smurfit Kappa for Molina's actual damages, including lost wages and benefits (both front and back pay);

2. judgment against Smurfit Kappa for compensatory damages in the maximum amount allowed by law and for punitive damages;

3. pre-judgment and post-judgment interest at the maximum allowed by law;

4. costs of suit, including attorneys' fees; and

5. Such other and further relief, both at law and in equity, to which Molina may be justly entitled.

        **Respectfully Submitted,**

        **PONCIO LAW OFFICES**
        **A Professional Corporation**
        **5410 Fredericksburg Road, Suite 109**
        **San Antonio, Texas 78229-3550**
        **Telephone: (210) 212-7979**
        **Facsimile: (210) 212-5880**

        **BY:** */s/ Alan Braun*

            **ADAM PONCIO**
            STATE BAR NO. 16109800
            **ALAN BRAUN**
            STATE BAR NO. 24054488

            **ATTORNEYS FOR PLAINTIFF**